Argued December 23, 1976, affirmed April 11, 1977

MARKANTONATOS et al, *Petitioners,*
*v.*
OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*
(CA 5698)
562 P2d 570

John S. Marandas, Portland, argued the cause and filed the briefs for petitioner.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

THORNTON, J.

## THORNTON, J.

Petitioners seek judicial review of the Oregon Liquor Control Commission's (OLCC) refusal to grant them a Dispenser Class "A" (DA) license for their restaurant, Zorba the Greek. Petitioners assert that the OLCC's findings of fact and ultimate findings of fact are not supported by substantial evidence and that therefore the conclusions of law, on which the license refusal ultimately depends, are unsupported. Additionally, petitioners assert that it was error for the hearings officer to have access to an OLCC file detailing evidence in a previous case in which petitioners were denied a license where the file was not introduced into evidence and that it was error for the commissioners to issue a final order without hearing the case or considering the record.

Petitioners at the hearing before the hearings officer introduced, in support of their application for a DA license, a petition signed by about 650 supporters, various documents indicating that petitioners' credit is sound, photographs of the decor of the restaurant, an Economic Analysis of the Portland Downtown Guidelines Plan conducted by a Portland consulting firm, a letter from the mayor of Portland indicating a need for more downtown liquor licenses and testimony by eight favorable witnesses. OLCC presented evidence in opposition in the form of testimony by three witnesses and the results of an informal survey.

After a hearing the hearings officer recommended denial of a DA license. At the hearing before OLCC, the denial was affirmed based on the following ultimate findings of fact, which are generalized restatements of findings of fact, and conclusions of law:

"ULTIMATE FINDINGS OF FACT

"1. There is some opposition in the community to the issuance of the license, and there is likewise some support.

"2. The area in which applicants' outlet is located is heavily saturated with DA outlets, with seven in a

[ 81 ]

radius of 1½ blocks. These outlets offer reasonably adequate service to the public. Applicants' witnesses referred in significant numbers to the shortcomings of only three of the outlets, and a generalized statement to the effect that 'all the outlets' in the area have similar problems does not adequately demonstrate that the witness was in fact aware of the existence of each of the seven outlets' names. The fact that three outlets in the area have replaced seven previously licensed is as indicative of lack of demand leading to the closure of the other outlets, as it is an opportunity for additional licenses in the area. Issuance of licenses to Rian's and L'Omelette was made on the basis of saturation at that time, together with all other factors present, and these outlets are more centrally located.

"3. A gross volume of food sales averaging approximately $60 a day is indicative of the lack of demand at the location, and the adequacy of present outlets to meet the public demand. A change of menu may possibly increase food sales, but the fact and extent of this change cannot be determined on the present record.

"4. Demand for Dispenser outlets in the downtown Portland core area in general may well continue to be present and increase in the future, but there is no basis in the record that this demand requires an additional DA outlet at this time, or if so, such demand exists at applicants' specific location. The testimony of a small number of witnesses is not persuasive on the issue of demand by the entire public, especially when the sales of the establishment indicate that large numbers of persons choose not to patronize the outlet.

"5. The fact that the number of DA licenses in downtown Portland exceed its ratable allocation indicates that the citizens of the state would be better served by issuance of the license to establishments better able to serve a greater number of the citizens of the community and state.

"From the foregoing Findings of Fact, the following Conclusions of Law are entered:

"CONCLUSIONS OF LAW

"1. Seven premises licensed to serve liquor by the drink are available within a radius of 1½ blocks from applicants' premises, [10-715(1)].

[ 82 ]

"2. Applicants' low gross food sales indicate a lack of demand at that location, and the adequacy of the seven outlets mentioned previously to provide service to the public, [10-720(5)].

"3. The granting of a Dispenser license to applicants' outlet would not be a judicious use of the limited number of such licenses available statewide, [10-715(10)].

"* * * * *."

Since the actual grounds for denial of the license in this case are the conclusions of law, findings of fact not relevant to those conclusions are superfluous and we need not consider them on appeal.

■ Petitioners maintain that the findings of saturation in the area and that other outlets adequately serve the public are not based on substantive evidence. The evidence is uncontroverted that there are seven DA licensed outlets within one and one-half blocks of applicants' premises. Applicants and six of their supporting witnesses testified that other establishments in the area generally provide bad service, were overcrowded and charged high prices. The OLCC found that the applicants had failed to establish that the other outlets were inadequate and gleaned the opposite conclusion from the testimony, i.e., the fact that the witnesses patronized the other establishments was evidence that the prices were not too high and the service was adequate. The applicants in this case did not introduce specific evidence tending to establish the inadequacy of other outlets in the area. The OLCC's conclusions that there is a heavy saturation in the area and that these outlets offer reasonably adequate service to the public, are rationally supported by the evidence. *McCann v. OLCC,* 27 Or App 487, 556 P2d 973 (1976), Sup Ct *review denied* (1977).

Petitioners challenge the OLCC's findings on food sales but do not contend that they are not based on the evidence. They maintain that the average per day food sales figure is misleading because petitioners are only open six days a week and not seven days a week. The commission's arithmetical method may have been

questionable, but that does not affect the operative fact that the applicants' food sales are low and that fact led the OLCC to conclude that there is a lack of demand for a DA license at the subject location. The finding that applicants' food sales are low is supported by the evidence.

Petitioners also object to the commission's rejection of their argument that present food sales are not pertinent since petitioners intend to change their menu to offer specialty Greek cuisine which would, according to their testimony, increase food sales by 100 percent to 400 percent. The OLCC need not accept petitioners' speculative predictions.

Contrary to petitioners' argument, the OLCC's third conclusion of law referred to above was not a holding that the 1:2000 ratio (ORS 472.110(4)) precludes issuance of the license, but that issuance of the license to these applicants would not be judicious given low food sales and a saturation in the immediate area.

■ Prior to the hearing, petitioners were told by the referee that he had access to the entire file of the OLCC, including material relevant to a refusal of a prior application by petitioners for a DA license. Petitioners assign as error the consideration of this material in violation of ORS 183.450(2). As petitioners were fully apprised that the referee had access to the prior material and that material did not form the basis for the commission's decision in this case, the error of the OLCC was not prejudicial. Annotation, 18 ALR2d 552 (1951).

■ In their third assignment of error, petitioners maintain that the decision of the OLCC must be reversed because the members of the commission did not personally hear the case or consider the record,

contrary to the provisions of former ORS 183.460.[1] That portion of former ORS 183.460 on which petitioners rely was deleted from the statute by Oregon Laws 1975, ch 759, § 13, p 2092, effective October 8, 1975. The final order in this proceeding was issued November 18, 1975. The requirement that the OLCC members personally consider the record before issuing a final order does not, therefore, apply in this case.

Affirmed.

---

[1] Former ORS 183.460 provided:

"Whenever in a contested case a majority of the officials of the agency who are to render the final order have not heard the case or considered the record, the order, if adverse to a party, *but not including* the agency itself, shall not be made until a proposed order, including findings of fact and conclusions of law, has been served upon the parties and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials who are to render the decision, *who shall in such case personally consider the whole record or such portions thereof as may be cited by the parties.*" (Italicized language deleted by Oregon Laws 1975, ch 759, § 13, p 2092.)